# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BYRON HARRINGTON,
    Petitioner,

vs.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:10-cv-751

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the London Correctional Institution, has filed a

pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter is

before the Court on the petition, respondent's return of writ, and petitioner's reply. (Docs. 1, 12,

15).

## I.   PROCEDURAL HISTORY

### State Trial and Appellate Court Proceedings

Petitioner's convictions and sentence stem from a series of thefts occurring in January

and March of 2007. On May 31, 2007, the Hamilton County, Ohio grand jury returned an

indictment charging petitioner with one count of breaking and entering in violation of Ohio Rev.

Code § 2911.13(A) in Case Number B 0704280. (Doc. 12, Ex. 1). On August 2, 2007, in Case

Number B 07062210A, the grand jury also indicted petitioner on seven additional counts of

breaking and entering in violation of Ohio Rev. Code § 2913.13(A), two counts of receiving

stolen property in violation of Ohio Rev. Code § 2913.51(A), and three counts of safecracking in

violation of Ohio Rev. Code § 2911.31(A).[1]  (Doc. 12, Ex. 9).  The cases were consolidated for trial purposes and a jury trial was scheduled for May of 2008.

Prior to trial, petitioner filed several pretrial motions, including several motions to suppress evidence obtained through the execution of search warrants.  In Case No B 0704280, petitioner filed a motion to suppress evidence which he claimed was obtained through an unconstitutional search and seizure of his person and vehicle.  (Doc. 12, Ex. 2).  Petitioner also filed a motion to suppress and a motion in limine regarding identification testimony, arguing that the procedure used to obtain the identification was unnecessarily suggestive and unreliable. (Doc. 12, Ex. 3 & 4).  On April 23, 2008, petitioner filed a motion to suppress a DNA sample obtained in the search of petitioner's person as well as evidence obtained in a search of petitioner's hotel room.  (Doc. 12, Ex. 5).  In Case No B 0706221-A, petitioner also filed a motion to suppress, a motion to suppress identification testimony, a motion in limine related to his identification, and a second motion to suppress and request for an evidentiary hearing.  (Doc. 12, Ex. 10-13).  Petitioner withdrew his motion to suppress the identification testimony.  (Doc. 12, Transcript p. 10).  Petitioner's remaining motions to suppress were denied.  (Doc. 12, Ex. 6, 14).

On May 14, 2008, petitioner was found guilty of seven counts of breaking and entering, two counts of receiving stolen property, and three counts of safecracking.  (Doc. 12, Ex. 8 & 16). Petitioner was sentenced to an aggregate sentence of 14 years.  (*See* Doc. 12, Ex. 16; *See also* Doc. 12, Ex. 20, p. 3).

---

[1] The indictment in Case No. B 0706221 included a total of fifteen counts charged against petitioner, Dante Harrington, and/or Lorenzo Jackson. (*See* Doc. 12, Ex. 9).  Petitioner was charged with breaking and entering in counts one, two, six, seven, twelve, fourteen, and fifteen; receiving stolen property in counts three and eleven; and safecracking in counts four, eight, and thirteen.  *Id.*  Petitioner was not charged in counts five, nine, and ten.  *Id.*

2

On July 2, 2008, petitioner filed a timely, pro se appeal to the Ohio Court of Appeals.

(Doc. 12, Ex. 17). Petitioner raised five assignments of error:

> ASSIGNMENT OF ERROR ONE – TRIAL COURT ERRED IN THEIR DENIAL OF HEARING FOR SUPPRESSION OF EVIDENCE PRIOR TO TRIAL WHEN IT WAS PROVEN THAT WARRANTS WERE FALSIFIED AND MISLEADING THEREBY CREATING PREJUDICE AGAINST DEFENDANT-APPELLANT
>
> SECOND ASSIGNMENT OF ERROR – TRIAL COURT ERRED BY INSTRUCTING THE JURY ON THE ISSUE OF COMPLICITY, WHEN IT WAS NEVER ORIGINALLY CHARGED AND WAS PRESENTED AFTER TRIAL WAS CONCLUDED AND JURY WAS IN DELIBERATIONS
>
> THIRD ASSIGNMENT OF ERROR – DEFENDANT-APPELLANT'S GUARANTEED CONSTITUTIONAL RIGHTS WERE VIOLATED THROUGH THE ILLEGAL SEARCH AND SEIZURE PROCESS WHICH HELPED TO CREATE THE WRONGFULLY OBTAINED EVIDENCE USED IN TRIAL COURT
>
> FOURTH ASSIGNMENT OF ERROR – TRIAL COUNSEL ERRED BY PROCEEDING WITHOUT THE PRESENCE OF DEFENDANT-APPELLANT AT CRITICAL STATE OF TRIAL THEREBY VIOLATING HIS CONSTITUTIONAL RIGHTS
>
> FIFTH ASSIGNMENT OF ERROR – THE ERRORS IN THIS MATTER CREATED A TAINTED ENVIRONMENT WHICH FOR THE "CUMULATIVE ERRORS" MADE IT IMPOSSIBLE FOR DEFENDANT TO RECEIVE A FAIR TRIAL

(Doc. 12, Ex. 18). On October 23, 2009, the Ohio Court of Appeals overruled petitioner's

assignments of error and affirmed the trial court's judgment. (Doc. 12, Ex. 20).

On November 5, 2009, petitioner filed a pro se application for reconsideration pursuant to

App. R. 26(A). (Doc. 12, Ex. 21). In the application, petitioner raised the following assignments

of error:

> A.   The trial court erred by not conducting a Franks hearing on the false statements made with the affidavit of the search warrant for the Mercury

3

Mountaineer SUV.

B.     The Court of Appeals did not fully address the merits of Harrington's Third Assignment of Error claiming the entire search and seizure process at his motel room was a violation of his Fourth Amendment right against unreasonable search and seizure.

C.     The Court [of] Appeals when making a conclusion on Harrington's Fourth Assignment of Error failed to consider the Ohio Supreme Court's decision in *James Jones v. The State of Ohio (Ohio), 26 Ohio St. 208.*

(Doc. 12, Ex. 21). On November 25, 2009, the Ohio Court of Appeals overruled the application.

(Doc. 12, Ex. 23).

### Ohio Supreme Court

On December 7, 2009, petitioner filed a timely appeal to the Ohio Supreme Court. (Doc. 12, Ex. 24). In his memorandum in support of jurisdiction, petitioner asserted four propositions of law:

Proposition of Law No. 1: The trial court erred by not conducting a Franks hearing on the false statements made with the affidavit of the search warrant for Mountaineer SUV.

Proposition of Law No. 2: The trial court erred by instructing the jury on the issue of complicity, when it was never originally charged and was presented after trial was concluded and jury was in deliberations.

Proposition of Law No. 3: The Defendant-Appellant's guaranteed constitutional rights were violated through the illegal search and seizure process which helped to create the wrongfully obtained evidence used in trial court.

Proposition of Law No. 4: The trial court erred by proceeding without the presence of Defendant-Appellant at critical stage of trial thereby violating his constitutional right to be present during the entire trial, [Const. Art. 1, sec. 10].

(Doc. 12, Ex. 25). On February 10, 2010, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal "as not involving any substantial constitutional question."

(Doc. 12, Ex. 27).

4

**Federal Habeas Corpus**

Petitioner filed the instant federal habeas corpus action on October 26, 2010. (Doc. 1).

Petitioner raises four grounds for relief:

**Ground One:** The trial court should have held a Franks hearing on the police officer[']s statements that were used for a search warrant when it was addressed to the court about inconsistency.

**Supporting Facts:** It was fully addressed to the Court that a Franks hearing was needed to show that the police officer lied in order to secure a search warrant thereby violating the Petitioner's Due Process rights as given by the Fifth Amendment.

**Ground Two:** The trial court abused it[]s discretion in instructing the jury on complicity.

**Supporting Facts:** the trial court allowed the jury to start deliberations and when the jury retired it came back with a question at this point the jury had already found the defendant not guilty of one count of B&E, (Count One) after the question the jury was now given a partial complicity instruction, thereby violating Petitioner's right to trial under Due Process in violation of the Fifth Amendment.

**Ground Three:** The trial court violated the Petitioner's rights when it did not suppress evidence that should have been suppressed, nor did it hold a suppression hearing when the evidence called for one.

**Supporting Facts:** The police officer on the stand admitted he entered the hotel room without a warrant and when it was brought up, Petitioner's counsel requested to renew their request for suppression of the evidence. The police officer clearly violated the Petitioner's rights of his 4th and 14th Amendments. Following it is the same police officer who admitted he lied to secure other warrants that resulted in Petitioner's property and place of residence also being searched[] using false affidavits.

**Ground Four:** The trial court erred and abused it[]s discretion when it proceeded without the presence of the defendant at a critical stage of the trial.

**Supporting Facts:** It is well established that a jury being handed down a jury instruction is a cr[i]tic[]al stage of a trial and as shown in this case the court even changed what the instructions were without Petitioner's knowledge and thereby violating the Petitioner's right to trial.

5

(Doc. 1, pp. 4-5).

Respondent argues that the petition should be denied. (Doc. 12). According to respondent, Grounds One, Two, and Three are not cognizable in federal habeas corpus. *Id.* at 9-15. As to Ground Four, respondent contends that petitioner's claim is without merit. *Id.* at 28-31.

## III. THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies

6

that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at

413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600.

As the Sixth Circuit recently explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's
> standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179
> L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the
> record before the state court where a claim has been adjudicated on the merits by
> the state court). It is not enough for us to determine that the state court's
> determination is *incorrect*; to grant the writ under this clause, we must hold that
> the state court's determination is *unreasonable.* . . . This is a "substantially higher
> threshold." . . . To warrant AEDPA deference, a state court's "decision on the
> merits" does not have to give any explanation for its results, *Harrington v.
> Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need
> to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the
> result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3,
> 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete

bar on federal court relitigation of claims already rejected in state proceedings" and "preserves

authority to issue the writ in cases where there is no possibility fairminded jurists could disagree

that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct.

at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner

must show that the state court ruling on the claim presented "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Id.* at 786-87.

7

The Supreme Court recently made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher,* __ U.S. __, 132 S.Ct. 38, 44 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene,* 132 S.Ct. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster,* 563 U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.,* at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.,* at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte,* 654 F.3d at 600 (quoting *Landrum v. Mitchell,* 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

8

**A. Grounds One and Three of the petition are not cognizable in federal habeas corpus.**

Grounds One and Three of the petition both pertain to the use of evidence at trial that petitioner claims was obtained as a result of illegal searches in violation of the Fourth Amendment. In Ground One, petitioner claims that the trial court abused its discretion in failing to conduct a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Petitioner contends that a *Franks* hearing was needed "to show that the police officer lied in order to secure a search warrant thereby violating the Petitioner's Due Process rights as given by the Fifth Amendment." (Doc. 1, p. 4). In Ground Three, petitioner claims that his constitutional rights under the Fourth and Fourteenth Amendments were violated when the trial court failed to suppress evidence obtained through a warrantless search of his hotel room. *Id.* at 5. Petitioner raised these claims on appeal to the Ohio Court of Appeals, who overruled the assignments of error as follows:

### II. Denial of Franks Hearing and Search of Motel Room

{¶6} In his first assignment of error, Harrington claims that the court erred when it overruled his motion to suppress and refused his request for a *Franks* hearing. In addition, Harrington's third assignment of error claims that the entire search and seizure process at his motel room, which produced the incriminating evidence used against him at trial, was illegal, thus violating his Fourth Amendment right against unreasonable searches and seizures.

{¶7} "Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."[2] This hearing is commonly known as a "*Franks* hearing." Harrington argues that the affidavits used to obtain the search warrants were materially and intentionally false. The basis of his argument is that the affidavits contained erroneous information regarding his criminal record, and that the affiants either intentionally or recklessly falsified this information. Specifically, Harrington points to the fact that the affidavits mentioned prior charges for breaking and entering, and burglary. Subsequent examination of his record revealed that Harrington had never been indicted on any breaking-and-entering charge. He had been

previously charged with one count of aggravated burglary, which was later dismissed. Harrington argues that this was enough of a "substantial preliminary showing" to entitle him to the *Franks* hearing denied by the trial court.

> [2] *Franks*, supra, at 155-156, 98 S.Ct. 2674.

{¶8} We disagree. As argued by the state, a search warrant's supporting affidavit has a presumption of validity.[3] To overcome this presumption, a defendant must show, by a preponderance of the evidence, that the affiant intentionally made a false statement or made a false statement with a reckless disregard for the truth.[4] Additionally, even if a warrant is supported by an affidavit containing intentionally false statements or statements made recklessly, it will still be considered valid if, with the false statements set aside, the affidavit's remaining content is sufficient to establish probable cause.[5]

> [3] *State v. Roberts* (1980), 62 Ohio St.2d 170, 178, 405 N.E.2d 247.
> [4] *Franks*, supra, at 155-156; *State v. Waddy* (1992), 63 Ohio St.3d 424, 441, 588 N.E.2d 819.
> [5] *Waddy*, 63 Ohio St.3d at 441, 588 N.E.2d 819.

{¶9} Harrington failed to meet his burden to show by a preponderance of the evidence that the police officer's affidavits were intentionally or recklessly false. We agree that the affidavits contained false statements: prior to this case, Harrington had never been indicted on any breaking-and-entering charge, and the one time he had been indicted for aggravated burglary, the charge was eventually dismissed. However, Harrington offered no evidence other than self-serving allegations that the false statements were made intentionally or recklessly. Further, the record reflects that Harrington testified under oath, in support of his motion, that he believed that he had previously been charged with breaking and entering.

{¶10} We are also convinced that, with the false statements contained in the affidavits set aside, the other facts supported the trial court's finding of probable cause. The affidavits contained truthful statements about Harrington's extensive criminal history including theft offenses, drug offenses, and offenses of general dishonesty, thus establishing the probable cause necessary to issue the warrants. Therefore, because probable cause was established, the search warrants were valid, and the evidence gathered as a result of the warrants was properly admitted. Under these circumstances, we conclude that the trial court did not err by refusing Harrington's request for a *Franks* hearing. In addition, because the search warrants were valid, we cannot say that the trial court erred in overruling Harrington's motion to suppress. Harrington's first and third assignments of error are overruled.

(Doc. 12, Ex. 20, pp. 3-5).

As respondent has argued in the return of writ, the Supreme Court held in *Stone v. Powell*, 428 U.S. 465 (1976), that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone,* 428 U.S. at 494–95.  The Sixth Circuit has developed a two-step inquiry to assess whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000).  Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp.2d 773, 860 (S.D. Ohio 2010).  Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Hillman v. Beightler,* No. 5:09-cv-2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010).

Courts have consistently held that the "relevant inquiry" in resolving the second question posed in *Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided"

by the state courts. *Wynne v. Renico,* 279 F. Supp.2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz–*

*Sandoval v. Gomez,* 81 F.3d 891, 899 (9th Cir. 1996)).[2]

> As long as a state prisoner has had an opportunity to litigate his Fourth
> Amendment claims by means of procedures that are "suitably crafted" to test for
> possible Fourth Amendment violations, a federal habeas court does not have the
> power, under *Stone,* to "second-guess the accuracy of the state courts' "resolution
> of those claims." Thus, a "mistaken outcome" of a suppression hearing that has
> been conducted in a state trial court, standing alone, does not deny a habeas
> petitioner's opportunity to fully and fairly litigate his Fourth Amendment claims. .
> . . Thus, even "potentially meritorious Fourth Amendment claims" are barred by
> *Stone* on habeas review if the petitioner had a full and fair opportunity to litigate
> his claims in the state courts.

*Id.* (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8–9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d

1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL 2232635, at *5 (quoting *Cabrera*

*v. Hinsley,* 324 F.3d 527, 531–32 (7th Cir. 2003)) ("Absent a subversion of the hearing process,

we will not examine whether the judge got the decision right. . . . '[F]ull and fair' guarantees the

right to present one's case, but it does not guarantee a correct result."); *Brown v. Berghuis,* 638

F. Supp.2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone,* . . . the

correctness of the state courts' conclusions is simply irrelevant.").

The Sixth Circuit has stated that the second *Riley* inquiry is "not meant to be a case by

case review of state court determinations," but rather "is a review of whether the state provided

an adequate mechanism to address Petitioner's Fourth Amendment claims." *Abdul–Mateen v.*

*Hofbauer,* No. 98–2323, 2000 WL 687653, at *3 (6th Cir. May 19, 2000). In *Abdul–Mateen,* the

court recognized that an exception was carved out in *Riley* for "egregious error in the application

of fourth amendment principles" amounting to a refusal by the state courts to consider or apply

---

[2] The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be
sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico,* 595 F.
Supp.2d 775 (E.D. Mich. 2009). Thereafter, the Sixth Circuit reversed the district court's revised judgment granting
habeas corpus relief based on that other ground; the Supreme Court recently denied certiorari review of *Wynne v.
Renico,* 606 F.3d 867 (6th Cir.), *cert. denied,* 131 S.Ct. 2873 (2011).

controlling Supreme Court precedents. *See id.* (quoting *Riley,* 674 F.2d at 526, in turn citing *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)). In *Riley,* the Sixth Circuit explained that when an "egregious error" of such "magnitude and nature" is present, as it was in *Gamble,* "a federal habeas court *might* be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner." *Riley,* 674 F.2d at 526 (emphasis added). In a subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious misapplication of a controlling Supreme Court precedent also could justify such a conclusion. *Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985). The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims. . . . Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone.* " *Id.*

Here, as in *Gilbert,* the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing was thwarted. *Cf. Bergholz v. McMackin,* No. 89–3740, 1990 WL 223036, at *3 (6th Cir. Dec. 27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent"). To the contrary, it appears clear from the record that petitioner was able to fully and fairly litigate his claim of a Fourth Amendment violation in the state courts.

Petitioner was permitted to raise his claims to the trial court though motions to suppress and the trial court held a hearing on the matter. (Doc. 12, Ex. 5 & 13; Transcript pp. 13-43). During the hearing, the trial court heard arguments from petitioner's counsel, examined the

13

search warrants, and heard testimony from petitioner as to his criminal history.  Moreover,

petitioner was able to challenge the trial court's ruling on direct appeal to the Ohio Court of

Appeals and Ohio Supreme Court.  (*See* Doc. 12, Ex. 20 & 27).  As is set forth above, the Ohio

Court of Appeals carefully considered petitioner's arguments and the applicable precedents in

finding that petitioner had failed to meet his burden of showing that the police officer's affidavits

were intentionally or recklessly false.  Furthermore, even omitting the false statements

concerning petitioner's criminal history, the appellate court found that the search warrants were

supported by probable cause, concluding that the trial court did not err in denying a *Franks*

hearing or otherwise denying petitioner's motions to suppress.  Although the Ohio Supreme

Court declined jurisdiction to hear the case and summarily dismissed the appeal that followed the

state appellate court's decision, it did so apparently because it was not persuaded by petitioner's

memorandum in support of jurisdiction that the claims merited further consideration.  (Doc. 12,

Ex. 27).

After review of the entire record, the Court concludes that Grounds One and Three of the

petition, challenging the denial of petitioner's motion to suppress evidence seized in violation of

the Fourth Amendment, is barred from review under the Supreme Court's *Stone* decision.  The

record simply does not support petitioner's claim that he was only afforded a "mock hearing" by

the trial court or that he was otherwise denied a full and fair opportunity to litigate his claims.

(*See* Doc. 15, p. 4).

Petitioner's argument that the Ohio Court of Appeals improperly considered Grounds

One and Three together is also unavailing.  (*See* Doc. 15, pp. 20-29).  Petitioner argues that the

claim raised in Ground Three, that the entire search of his hotel room was unconstitutional

because the police entered the hotel room without a warrant, was not addressed by the Ohio

14

Court of Appeals.[3]  However, petitioner's argument does not alter the Court's determination that he was given a full and fair opportunity to litigate his claims.  Petitioner raised the claim at trial, on appeal, in his application to reconsider, and on further appeal to the Ohio Supreme Court. The undersigned is convinced that petitioner was provided a full and fair opportunity in the state courts to litigate the claim, and the presentation of the claim was not thwarted by any failure of the State's corrective process.  *Cf. Stone,* 428 U.S. at 494–95.  Accordingly, federal habeas review of Grounds One and Three is prohibited under *Stone.*

**B.  Ground Two is without merit.**

In Ground Two, petitioner contends that he was denied the right to a fair trial under the Due Process Clause of the Fifth Amendment based on the trial court's instruction regarding complicity.  (Doc. 1, p. 4).  According to petitioner, he was not put on notice of being charged with complicity and no testimony was offered at trial to support a conviction based on his being complicit.  (Doc. 15, pp. 12-14).  Petitioner further contends that the timing of the instruction was unfair, arguing that he "fought the case on its face of the charges," that the jury had already found him not guilty on one count at the time of the instruction, and that he was prejudiced by the instruction because "there is a large probability that the jury would have not found the Petitioner guilty of the other counts due to them being similar in nature."  *Id.* at 13-14.

Petitioner raised these claims on appeal to the Ohio Court of Appeals, which overruled the assignment of error.  The court found that petitioner was put on notice of the charge via the Ohio complicity statute and that the timing of the instruction did not deprive petitioner of his due process rights:

---

[3] Petitioner cites to the testimony of Detective Catron, the officer executing the search of the hotel room.  According to petitioner, Catron's testimony establishes that he entered petitioner's hotel room without a warrant and that the appellate court decision "does not even address the illegal search of room 230, which we know occurred before any warrant was achieved."  (Doc. 15, p. 22).

### III. Complicity Instruction and the Timing of It

{¶11} Harrington's second assignment of error concerns the trial court's jury instruction regarding complicity. Harrington claims that it was error for the court to sua sponte instruct the jury on complicity, during the jury-deliberation stage, after answering a jury question. Harrington also claims that it was inherently unfair to instruct the jury on complicity because the entire trial had proceeded on the theory that Harrington was the principal offender, not an aider and abettor.

{¶12} R.C. 2923.03(A)(2) states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." In addition, R.C. 2923.03(F) states, "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." In other words, if the evidence permits, a defendant is on notice that he or she may be found guilty either as the principal offender or as a complicitor pursuant to R.C. 2923.03(F). Many Ohio cases have held that defendants may be found guilty under the language of R.C. 2923.03 even though they have been indicted and prosecuted as principal offenders. [6]

> [6] See *State v. Tumbleson* (1995), 105 Ohio App.3d 693, 697, 664 N.E.2d 1318; *State v. Ensman* (1991), 77 Ohio App.3d 701, 703, 603 N.E.2d 303; *State v. Dotson* (1987), 35 Ohio App.3d 135, 138, 520 N.E.2d 240.

{¶13} Harrington relies upon one of our prior cases, *State v. Killings*, [7] to further his argument that the trial court should not have instructed on complicity. In *Killings*, the defendant, along with a co-defendant, was indicted on one count of kidnapping and one count of rape in the abduction and sexual assault of a female. During trial, testimony was presented that the victim had been raped twice, once by Killings and once by the co-defendant. At the conclusion of the trial, the jury was instructed on complicity and eventually returned a verdict of guilty on the rape charge and not guilty on the kidnapping charge. The defendant appealed the rape conviction, and we reversed, holding that it was improper to instruct the jury on complicity because the defendant had been indicted only as the principal offender for the rape. Specifically, we stated, "[F]undamental decency and civilized conduct require that an accused be permitted to defend himself fairly against crimes charged to him, and to do so, it is necessary that he be fully and fairly informed of the nature and cause of the accusations against him. The fundament of such information is provided by the indictment." [8]

> [7] *State v. Killings* (May 29, 1998), 1st Dist. Nos. C-970167 and C-970247, 1998 Ohio App. LEXIS 2319.
> [8] Id., quoting *State v. Crooks* (Dec. 12, 1984), 1st Dist. No. C-840184, 1984 Ohio App. LEXIS 11811.

16

{¶14} The facts in Harrington's case and the facts in *Killings* can be distinguished. The defendant in *Killings* was charged with one count of rape and was prosecuted as a principal offender. A complicity instruction pursuant to R.C. 2923.03(F) was improper because the defendant was not charged for the second rape; in other words, it was impossible for R.C. 2923.03(F) to put him on notice as to the possibility of being an accomplice because he was not indicted on anything relating to the second rape.

{¶15} Unlike the defendant in *Killings*, Harrington was indicted as a principal joint offender, along with two other co-defendants, with respect to all the charges. Therefore, R.C. 2923.03(F) put Harrington on notice that he could be tried as either the principal offender or as a complicitor on any or all of the charges.

{¶16} Turning now to the timing of the trial court's sua sponte complicity instruction (during jury deliberation, after a jury question), Harrington cites *State v. Lamarr* [9] in support of his argument that the trial court erred in instructing the jury on complicity. *Lamarr* has facts similar to this case. The prosecution sought a complicity instruction on a drug-possession charge prior to closing arguments. The court denied the motion, indicating that no mention of aiding and abetting had been made during the trial. The parties proceeded with closing arguments, and during the prosecution's summation, the state, for the first time, argued that the defendant was guilty of complicity for aiding and abetting a codefendant on the possession charge.

[9] 2005-Ohio-6030.

{¶17} At the end of closing arguments, the court did not instruct the jury on complicity. During deliberation, the jury specifically asked the court about complicity. This jury question prompted the court, over the defendant's objection, to reconsider its earlier decision and to instruct the jury on complicity.

{¶18} In a two-to-one decision, the Third Appellate District upheld the conviction, concluding that there was sufficient evidence produced during the trial to establish complicity, thus allowing the trial court to instruct on complicity under R.C. 2923.03(F).[10] The lead and concurring opinions also determined that any error that the trial court had committed in coming to a decision to instruct on complicity was procedural in nature, not substantive, and therefore harmless. [11] The dissenting opinion disagreed, reasoning that the defendant did not have an opportunity to rebut the complicity argument first raised in the prosecution's summation. Under these circumstances, the complicity instruction was "inherently unfair and [went] beyond the limits of propriety." [12]

[10] Id. at ¶12.
[11] Id. at ¶18 and ¶26 (Rogers, J., concurring).
[12] Id. at ¶27 (Bryant, J., dissenting).

{¶19} Harrington relies on the dissenting opinion in *Lamarr*, arguing that the timing of the complicity instruction in this case was "inherently unfair." But we distinguish *Lamarr* from this case. In *Lamarr*, the defendant never had the chance to address the complicity argument made by the state in its summation. In this case, neither the state nor the defense addressed the issue of complicity during closing arguments, so there was nothing for Harrington to rebut. The first time the issue of complicity was addressed was after the jury's question to the trial court. We hold that it was not error for the trial court to instruct the jury on complicity in response to the jury's question.

{¶20} Harrington also cites *State v. Woods* [13] in support of his argument that the evidence submitted at trial was not sufficient to find him guilty of aiding and abetting, and, therefore, that a complicity instruction was improper. In *Woods*, the defendant was acquitted under Crim. R. 29 on an indicted charge of conspiracy. However, the trial court had instructed the jury on the offense of complicity when it determined that there was sufficient evidence that the defendant either was the principal offender or was present when the offenses of aggravated murder and aggravated robbery had been committed. In reversing the defendant's convictions, we held, among other things, that the evidence adduced at trial permitted the defendant to be found guilty only as a principal offender. Therefore, the complicity instruction was improper.

[13] (1988) 48 Ohio App.3d 1, 548 N.E.2d 954.

{¶21} Unlike *Woods*, we hold that there was sufficient evidence presented in this case to allow a jury instruction on complicity under R.C. 2923.03(F). For example, a police officer identified Harrington's voice as that of the person who had called the alarm company during a break-in; a coat the defendant was wearing at the time of a break-in and in the same vicinity was found in his motel room; stolen items from multiple break-ins were found in Harrington's motel room and car; Harrington's DNA was found on a cigar at a crime scene; and Harrington's DNA was found on tools recovered from a stolen van. Harrington's second assignment of error is overruled.

(Doc. 12, Ex. 20).

As an initial matter, to the extent petitioner claims he is entitled to relief because the trial court committed error or otherwise abused its discretion under state law with respect to the jury instructions, he raises issues of state law only that are not cognizable in this federal habeas corpus proceeding. A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the

United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a);

*Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)

("it is not the province of a federal court to reexamine state-court determinations on state-law

questions").

It is well-settled under Supreme Court precedent that errors in jury instructions in a state

criminal trial generally are not reviewable in a federal habeas corpus proceeding unless they

deprived the petitioner of a fundamentally fair trial and due process of law. *See Henderson v.*

*Kibbe,* 431 U.S. 145, 154 (1977); *see also Estelle,* 502 U.S. at 72. Before a federal court may

overturn a state conviction based on an error in the jury instructions, "it must be established not

merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it

violated some right which was guaranteed to the defendant by the Fourteenth Amendment."

*Cupp v. Naughten,* 414 U.S. 141, 146 (1973).

Therefore, the question on federal habeas review of a state conviction is "whether the

ailing instruction by itself so infected the entire trial that the resulting conviction violates due

process." *Estelle,* 502 U.S. at 72 (quoting *Cupp,* 414 U.S. at 147); *see also Henderson,* 431 U.S.

at 154. The Supreme Court has clearly established that in answering this question, the

instruction must "not be judged in artificial isolation," but rather must be considered in the

context of the instructions as a whole and the trial record. *Cupp,* 414 U.S. at 146-47; *see also*

*Estelle,* 502 U.S. at 72. In addition, if the challenged instruction is ambiguous, the inquiry turns

on whether a reasonable likelihood exists that the jury applied the instruction in a way that

violates the Constitution. *Estelle,* 502 U.S. at 72 (quoting *Boyde v. California,* 494 U.S. 370,

380 (1990)).

After review of the record in the instant case, the Court finds that the Ohio Court of Appeals' decision is neither contrary to nor an unreasonable application of federal law. Ohio Rev. Code § 2929.03 states that "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense" and Ohio and federal courts have expressly acknowledged that "a defendant may be indicted for the commission of a substantive crime as a principal offender and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor without violating federal due process." *Hill v. Perini*, 788 F.2d 406, 406-07 (6th Cir. 1986). *See also State v. Herring,* 762 N.E.2d 940, 949 (Ohio 2002) ("R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense."); *Anderson v. Coyle*, No. 98-3136, 1999 WL 98527, at *2 (6th Cir. 1999) (collecting cases). Additionally, as respondent argues in the return of writ, petitioner was on further notice of the possibility of being convicted of complicity based on the specific counts in the indictment which charged him with committing several offenses with Dante Harrington and Lorenzo Jackson. (*See* Doc. 12, Ex. 9). Therefore, the Court finds that the jury instructions on complicity neither deprived petitioner of notice of the charges nor denied him a fair trial.[4]

Petitioner's argument that the Ohio Court of Appeals' decision is based on an unreasonable determination of the facts is also without merit. Petitioner contends that the Ohio Court of Appeals incorrectly distinguished his case from *State v. Lamarr*, No. 8-04-39, 2005 WL 3031667, at *1 (Ohio App. 3 Dist. Nov. 14, 2005). As noted above, petitioner urged the Ohio Court of Appeals to follow the dissent in *Lamarr*, arguing that the timing of the jury instruction

---

[4] As to petitioner's contention that the timing of the instruction was unfair because the jury had already found him not guilty of one count at the time of the instruction and that, without the complicity instruction, there was a strong probability that he would have been found not guilty of the remaining counts, the Court is aware of nothing in the record that would indicate that the jury found petitioner not guilty of the first count prior to hearing the instruction.

was unfair.  In distinguishing petitioner's case from *Lamarr*, the Ohio Court of Appeals stated

that in petitioner's case, "neither the state nor the defense addressed the issue of complicity

during closing arguments, so there was nothing for Harrington to rebut."  (Doc. 12, Ex. 20, p. 8).

Petitioner correctly points out that his attorney did in fact discuss complicity in his closing.[5]

However, the undersigned is not persuaded that the Court of Appeals' decision was therefore

based on an unreasonable determination of the facts or that petitioner is otherwise entitled to

habeas relief.  *See Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) ("[I]t is not enough for the

petitioner to show some unreasonable determination of fact; rather, the petitioner must show that

the resulting state court decision was 'based on' that unreasonable determination.").  The Court

of Appeals distinguished *Lamarr* based on the fact that, in *Lamarr*, the state raised the

complicity issue after the defense had made its closing argument, thereby denying the defendant

the opportunity to rebut the allegations.  *See Lamarr*, 2005 WL 3031667, at \*5 ("By first raising

the issue in rebuttal, the State effectively denied Lamarr from presenting a defense on

complicity.").  In the instant case, as the Ohio Court of Appeals reasonably determined, the state

never raised the complicity issue and, even though the defense did address it in closing,

petitioner was not unfairly denied the ability to rebut allegations that he was complicit.

The Court finds that petitioner is not entitled to relief based on the claims asserted in

Ground Two of the petition.  To the extent petitioner alleges that the trial court erred under state

law in issuing jury instructions, his claims are not cognizable in this federal habeas corpus

---

[5]  During closing arguments, petitioner's counsel argued as follows:

> Maybe [petitioner] sat outside and listened to the police scanners.  He is not charged with that.  He is not
> charged with aiding and abetting.  He is not charged with conspiracy.  He is charged with physically,
> personally entering into that store.  They did not prove it.

(Doc. 12, Transcript p. 1202).

proceeding.  Furthermore, petitioner has not demonstrated that the Ohio Court of Appeals'

decision was contrary to or an unreasonable application of federal law, or that the decision was

based on an unreasonable determination of the facts.

### C. Ground Four is without merit.

In Ground Four, petitioner contends that his constitutional right to be present at all

critical stages of the trial was violated when the trial court instructed the jury on complicity in his

absence.  (Doc. 15, pp. 29-30).  Petitioner raised this claim on appeal to the Ohio Court of

Appeals, which found that petitioner had waived the right by disrobing and refusing to enter the

courtroom:

> ### Harrington Not Present in Courtroom
>
> {¶22} In his fourth assignment of error, Harrington argues that the trial court
> erred when it proceeded at a "crucial stage" of the trial without him being present.
> A review of the record indicates that Harrington was not present in the courtroom
> during the jury deliberation stage when the court addressed the jury's question
> regarding complicity.
>
> {¶23} Crim. R. 43(A) states, "[T]he defendant must be physically present at every
> stage of the criminal proceeding and trial, including the impaneling of the jury,
> the return of verdict, and the imposition of sentence[.] * * *  In all prosecutions,
> the defendant's voluntary absence after the trial has been commenced in the
> defendant's presence shall not prevent continuing the trial to and including the
> verdict." [14]
>
> > [14] See, also, State v. Meade, 80 Ohio St.3d 419, 421[,] 1997-Ohio-332,
> > 687 N.E.2d 278.
>
> {¶24} The record shows that Harrington had voluntarily disrobed and refused to
> come to the courtroom.  Harrington's attorney was aware of Harrington's actions,
> did not object to his absence, and waived his presence.  Under these
> circumstances, we conclude that Harrington's absence was voluntary and
> accordingly overrule his fourth assignment of error.

(Doc. 12, Ex. 20, pp. 9-10).

It is firmly established that an accused has a constitutional right to be present at trial. *United States v. Marshall*, 248 F.3d 525, 534 (6th Cir. 2001) (citing *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)); *Finney v. Rothgerber*, 751 F.2d 858, 861 (6th Cir. 1985) (citing *Diaz v. United States*, 223 U.S. 442, 454 (1912)). The Supreme Court has held that the constitutional right to be present at trial stems from both the Confrontation Clause of the Sixth Amendment and the Due Process Clause. *U.S. v. Gagnon*, 470 U.S. 522, 526 (1985). In situations where the confrontation of witnesses or evidence is not implicated, a defendant has a due process right to be present "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Id.* at 526 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-106 (1934)). In addition, the right to be present at trial is waivable, provided that it is waived knowingly and voluntarily. *Marshall*, 248 F.3d at 534 (citing *Diaz*, 223 U.S. at 454). "To be a knowing and voluntary waiver, a defendant 'must be aware of the processes taking place, of his right and of his obligation to be present, and he must have no sound reason for remaining away." *Id.* (quoting *Taylor v. United States*, 414 U.S. 17, 19-20 n.3 (1973)).

After a review of the record in the instant case, the Court finds that the Ohio Court of Appeals' decision, finding that petitioner voluntarily waived his right to be present during the jury instruction, was not contrary to or an unreasonable application of federal law. Although petitioner contends that he "did not in any way indicate to the court or his counsel that he did not wish to be present at anytime in any of the proceedings" (Doc. 15, p. 30), the record belies his argument:

> THE COURT: I want to go on the record before we bring the jury back in. For the record, Mr. Haas, I don't know if you have been advised, but apparently your

23

client disrobed this morning and is refusing to come to court, because he doesn't feel it is necessary. I know you have waived his presence, but I'm not going to bring him to court without his proper attire. Anything you wish to say?

MR. HAAS: No, Your Honor.

. . .

THE COURT: We'll bring the jury in. Now your client is apparently still disrobed, Mr. Haas. If you want us to try to put his clothes on, we can have somebody do that and bring him down.

(Doc. 12, Transcript p. 1281, 1284).

In this habeas corpus proceeding, "a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Here, the Ohio Court of Appeals determined that petitioner voluntarily disrobed and refused to come to the courtroom. (Doc. 12, Ex. 20, p. 10). The appeals court further determined that petitioner's counsel was aware of his actions and did not object to his absence. Based on these facts, the court of appeals concluded that petitioner's absence from the courtroom during the deliberation stage was voluntary. *Id.* In this context, "[t]he facts recited by the state courts in determining that a waiver occurred are entitled to a presumption of correctness." *Hill v. Johnson*, No. 94-2191, 1995 WL 462408, at *2 (6th Cir. Aug. 3, 1995) (citing *Finney*, 751 F.2d at 862). Based upon the record before the Court, and after careful consideration of the arguments advanced by petitioner, the Court finds that the Ohio Court of Appeals reasonably determined that petitioner voluntarily refused to be present for the jury instructions.

Petitioner further contends that the Ohio appellate court improperly relied on cases distinguishable from his case in reaching its decision. Specifically, petitioner notes that *State v. Meade*, 687 N.E.2d 278 (Ohio 1997), concerned a defendant who failed to appear for sentencing

24

while he was out on bond while, in contrast, he was in state custody when the additional jury

instructions were given.  (Doc. 15, p. 31).  Quoting *Evans v. United States*, 284 F.2d 393, 395

(6th Cir. 1960), petitioner argues that "while it has been held that a defendant, not in custody,

may waive his right to be present at the trial, it is doubtful whether in a felony case he has the

power to do so, when he is held in custody."  (Doc. 15, p. 32 (internal citations omitted)).

Petitioner argues had he been present he could have objected to the instructions and the judge

would then have had the opportunity to correct them.  *Id*.

      The Court is not persuaded by petitioner's arguments.  First, as to his reliance on *Evans*,

the Court finds the case distinguishable from the instant case.  In *Evans*, the Sixth Circuit noted

that "[t]he defendant did not know of the jury's request for additional instructions until after the

court had instructed the jury in his absence.  The record [did] not show that defendant knew or

was advised of his rights." *Evans*, 284 F.2d at 395.  In contrast, in this case the record indicates

that petitioner was informed of the hearing and presumably was aware of his right to attend, but

determined his presence was unnecessary.  (*See* Doc. 12, Transcript p. 1281).  Furthermore, this

Court only has authority to grant habeas relief where the state court decision is contrary to or an

unreasonable application of clearly established federal law, as set forth by Supreme Court

precedent.  *Harrington*, 131 S.Ct. at 785.  Petitioner has failed to demonstrate that it is clearly

established federal law that a defendant in custody may not waive his right to physical presence.

*See, e.g., United States v. Maxton*, No. 98-4084, 1999 WL 436291, at *1 (4th Cir. June 29, 1999)

(rejecting the claim that "a defendant who is in custody does not have a right to give up his

presence at trial, nor does a judge have authority to grant a defendant's request not to be

present") (internal quotation marks omitted).

Finally, even if the Court could find that an error of constitutional dimension occurred in petitioner's case, he is not entitled to relief unless the error also had a "substantial and injurious effect or influence in determining the jury's verdict." *See, e.g., Calderon v. Coleman,* 525 U.S. 141, 145-47 (1998); *O'Neal v. McAninch,* 513 U.S. 432, 435-36 (1995); *see also Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (applying standard of review enunciated in *Kotteakos v. United States,* 328 U.S. 750 (1946), a federal direct review case, to federal collateral review proceeding under 28 U.S.C. § 2254). Under this "harmless error" standard, if upon review of the entire record, the court is convinced that "the error did not influence the jury, or had but slight effect," the conviction must stand. *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 764. On the other hand, if the court "is left in grave doubt" and "cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," the court must find that the error had a substantial influence on the jury and the conviction cannot stand. *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 765.

After review of the entire record the undersigned is convinced that to the extent any constitutional error stemmed from petitioner's absence such error was harmless. Following petitioner's refusal to get dressed and attend court, petitioner's counsel was permitted to address the trial court regarding petitioner's attendance and to object to the court's response to the jury question and complicity instruction. (Doc. 12, Transcript pp. 1281-84). As to the complicity instruction, counsel objected on the basis that petitioner was not specifically charged with complicity, was not on notice of any complicity charge, and that he specifically instructed the jury that petitioner was not charged with conspiracy. *Id.* at 1282-83. Counsel further moved the trial court to reopen the evidence, asserting that the court was in effect changing the charges, and

26

moved for a mistrial. *Id.* at 1284. Although petitioner notes that his presence during the instructions would have allowed him to object to any improper instruction, he has failed to indicate what objections he would have made or how such objections would have differed from those made by his counsel. The trial record indicates that the jury was called in for a total of three minutes, during which the trial judge read the jury's question and read the complicity statute. *Id.* at 1285-88. To the extent that petitioner's absence resulted in constitutional error, in light of the above facts the undersigned is convinced that such an error had no impact on the jury or the verdict in his case.

The Court finds that petitioner is not entitled to relief on the claims asserted in Ground Four. Petitioner has failed to demonstrate that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of federal law. Furthermore, to the extent that any constitutional error resulted from petitioner's absence, such an error was harmless. Accordingly, petitioner is not entitled to relief on the claims asserted in Ground Four of the petition.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief and his habeas petition should be denied. Grounds One and Three of the petition are not cognizable in federal habeas corpus and Grounds Two and Four are without merit. Therefore, it is **RECOMMENDED** that petitioner's petition for a writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

### IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a

"viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

      3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 4/5/2012

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BYRON HARRINGTON,                          Case No. 1:10-cv-751
    Petitioner,

                                            Barrett, J.
    vs.                                    Litkovitz, M.J.

WARDEN, LONDON
CORRECTIONAL INSTITUTION,                  **NOTICE**
    Respondent.


        Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Byron Harrington # 585-751
London Corr. Institution
PO Box 69
1580 State Route 56
London, OH 43140

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☑ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7003 2260 0002 6723 4705

PS Form **3811**, February 2004      Domestic Return Receipt      102595-02-M-1540