**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Byron Harrington,                )
                                       )
             Petitioner,     ) Case No. 1:10-CV-751
                                       )
   vs.                              )
                                       )
Warden, London Correctional   )
Institution,                 )
                                       )
            Respondent.   )

O R D E R

      This matter is before the Court on Petitioner Byron Harrington's petition for a writ

of habeas corpus (Doc. No. 1), Magistrate Judge Litkovitz's Report and

Recommendation of April 5, 2012 (Doc. No. 10) recommending that Petitioner's petition

be denied, and Petitioner's objections to the Report and Recommendation (Doc. No.

21).  For the reasons that follow, Petitioner's objections are not well-taken and are

**OVERRULED**; the Court **ADOPTS** the Report and Recommendation; Petitioner's

petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

I. Background

      Petitioner Byron Harrington is a prisoner in the custody of the Ohio Department

of Rehabilitation and Correction serving an aggregate term of fourteen years of

imprisonment following his convictions after a jury trial on seven counts of breaking and

entering, two counts of receiving stolen property, and three counts of safecracking.

Petitioner's convictions and sentence were affirmed by the Ohio court of appeals and

the Supreme Court of Ohio declined further discretionary review of Petitioner's appeal

as not involving any substantial constitutional question.

Petitioner filed a petition for a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254 in October 2010.  Petitioner raised four exhausted claims in his petition: 1) The trial court erred by not conducting a Franks hearing on the question of whether a police officer made a false statement in an affidavit filed in support of an application for a warrant to search a Mountaineer SUV; 2) The trial court erred in instructing the jury on the issue of complicity when complicity was not originally charged in the indictment and was presented to jury after the trial concluded and the jury was in deliberations; 3) The trial court erred by not suppressing evidence that should have been suppressed and by failing to hold a suppression hearing; and, 4) The trial court erred when it proceeded without the Petitioner's presence during a critical stage of the trial - specifically when the trial judge gave the jury a supplemental instruction on complicity.   Doc. No. 1, at 4-5.

Magistrate Judge Litkovitz issued a Report and Recommendation which concluded that Petitioner's habeas petition should be dismissed.  Judge Litkovitz concluded that Petitioner's first and third assignments of error, which implicate the Fourth Amendment, are not cognizable in these habeas proceedings because Petitioner had a full and fair opportunity to litigate those claims in the state courts.  Judge Litkovitz determined that Petitioner's second assignment of error is without merit because the state court's determination that Petitioner was sufficiently on notice that he could be convicted of complicity on the substantive charges in the indictment was not contrary to or an unreasonable application of federal law, or based on an unreasonable determination of the facts.  Finally, regarding Petitioner's fourth assignment of error,

2

Judge Litkovitz concluded that the state court's determination that Petitioner voluntarily waived his right to be present during the supplemental jury instruction by disrobing and refusing to enter the courtroom was not contrary to or an unreasonable application of controlling law. Judge Litkovitz further concluded that to the extent the trial court erred in excluding Petitioner from the courtroom, the error was harmless because his trial counsel adequately protected his rights by objecting to the supplemental instruction and because Petitioner failed to identify any objections that he would have made had he been present in the courtroom that would have been different from those made by his trial counsel.

Petitioner filed timely objections to Judge Litkovitz's Report and Recommendation which are now ready for disposition. The Court, infra, discusses Petitioner's first and third assignments of error together and his second and fourth assignments of error together because the issues therein overlap or arise out of the same or similar set of facts. The Court will also supplement the factual background as needed in its analysis of those claims.

## II. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, the district court shall not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of

3

the facts in light of the evidence presented in the State court  proceeding. 28 U.S.C. § 2254(d).

A state-court opinion violates the "unreasonable application" clause of § 2254 when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000).  A state-court opinion will also involve the "unreasonable application" of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." Seymour v. Walker, 224 F.3d 542, 549 (6th Cir. 2000).  The Supreme Court stated that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  In defining the meaning of the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

Pursuant to Fed. R. Civ. P. 72(b), this Court reviews de novo Magistrate Judge Litkovitz's Report and Recommendation.

### III.  Analysis

### A. First and Third Assignments of Error

Petitioner's first and third assignments of error concern the trial court's rulings on two motions to suppress he filed.

The first motion to suppress addressed a search of Petitioner's car.  Petitioner contends that the trial court should have held a <u>Franks</u> hearing on this motion because the police officer made false statements in the affidavit supporting the application for the search warrant.  Both the trial court and the court of appeals concluded that Petitioner was not entitled to a <u>Franks</u> hearing because the affidavit still established probable cause with the offending paragraph stricken.  <u>State v. Harrington</u>, Nos. C-800547, C-0800548, 2009 WL 3400931, at *2 (Ohio Ct. App. Oct. 23, 2009).

Petitioner's second motion to suppress addressed a warrantless search of his motel room by a police officer.  Petitioner contends that the trial court erred by not holding a suppression hearing on this issue and by not suppressing evidence seized from his hotel room.

The circumstances surrounding the search of Petitioner's hotel room are somewhat confusing.  It appears that in the course of searching Petitioner's vehicle, the officers discovered evidence that led them to believe that other evidence would be located in Room 230 of the Super 8 Motel in Cincinnati.  Police officers asked the hotel manager for permission to search the room and he refused because the officers did not have a warrant.  Officers then obtained a search warrant and recovered numerous items taken in the burglaries.

Prior to trial, Petitioner moved to suppress evidence seized from the hotel room. It appears from the hearing transcript that Petitioner's attack on this search was threefold.  First, Petitioner asserted the "fruit of the poisonous tree" doctrine - Petitioner's theory was that since the search of his vehicle was illegal, and that evidence led to the hotel room, the evidence from his hotel room should be suppressed.  Second,

5

Petitioner argued that the affidavit in support of the search warrant contained false statements by the police officer.  Third, Petitioner argued that the affidavit on its face was insufficient to establish probable cause to search the hotel room.

The trial judge denied the motion to suppress.  The judge determined that the affidavit did on its face establish probable cause to search the hotel room.  Doc. No. 12-3, at 30.  It is not clear from the transcript whether the trial judge addressed the other grounds Petitioner advanced for suppressing the evidence from the hotel room.  It does not seem that he did.  During the trial, however, it was apparently discovered for the first time that two detectives entered the hotel room before the officers actually obtained the search warrant.  Doc. No. 12-13, at 32, 52-53, 66.  After the jury was excused for a break, the trial judge sua sponte raised the issue of this newly-discovered information and observed that Petitioner's original motion to suppress might have been different had he known that officers had entered the room without a warrant.  The judge also noted some other attendant issues that might have allowed a warrantless search such as whether Petitioner had standing,[1] whether there was consent to search the room, and whether there were exigent circumstances that would have allowed a warrantless search.[2]  Petitioner's trial counsel asked whether the judge intended to suppress the evidence from the hotel room.  The judge answered that he was not going to suppress the evidence, but raised the issue only to note that this information was not available

---

[1]    The record shows that although Petitioner had a card key to the room, a woman named Amanda Pinkston had actually rented the motel room in her name.

[2]    A detective testified that he and another officer entered the room without a warrant because two other suspects in these burglaries were believed to be at large and they wanted to secure any evidence to prevent it from being destroyed.

when he originally denied the motion to suppress.  Doc. Id. at 68.  Petitioner's trial counsel, however, did not formally re-new his motion to suppress or otherwise object to the court's ruling.  See id. at 68-69.

Petitioner's direct appeal on this issue, however, although noting the original warrantless entry of the hotel room, appears to have been limited to contending that the search warrant was invalid because the affidavit contained false statements.  See Doc. No. 12-1, at 73-75.  As it did on Petitioner's first motion to suppress, the court of appeals ruled that the affidavit still supported probable cause to issue the warrant with the alleged false statements omitted.  Harrington, 2009 WL 3400931, at *2.

Petitioner's habeas petition challenges the state court's rulings on these two motions to suppress.  Petitioner contends that the trial court erred by not ordering a Franks hearing on either of his motions and that it erred by not suppressing evidence that should have been suppressed.  In her Report and Recommendation, Judge Litkovitz found that these two assignments of error are not cognizable in federal habeas proceedings because Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the state court system.  Petitioner objects to that conclusion, arguing that he was only afforded a "mock hearing" on his motions in state court on the day the trial started.

Claims that the state court failed to suppress evidence are not cognizable in federal habeas proceedings if the state has provided a full and fair opportunity for the petitioner to litigate a Fourth Amendment claim.  Seymour v. Walker, 224 F.3d 542, 553 (6th Cir. 2000).  In determining whether a federal court may consider a habeas petitioner's Fourth Amendment claim, it must first determine whether the state

7

procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim.  <u>Machacek v. Hofbauer</u>, 213 F.3d 947, 952 (6th Cir. 2000).  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.  <u>Id.</u>  The Sixth Circuit recently made clear that in considering whether a habeas petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court, a federal court will not inquire into the adequacy of the procedures the state court used to rule on his motion to suppress.  <u>Good v. Berghuis,</u>___F.3d___, No. 12-1428, 2013 WL 4767183, at *2 (6th Cir. Sept. 6, 2013). "In the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim."  <u>Id.</u>  In <u>Good</u>, the Court held that the petitioner's Fourth Amendment claim was not cognizable in habeas proceedings because he was able to present his motion to suppress in both the trial court and the state court of appeals.  <u>Id.</u> at *4.

<u>Good</u> clearly forecloses habeas review of both of the Fourth Amendment claims Petitioner asserts in his first and third assignments of error.  Petitioner was able to file motions to suppress searches of his car and of the hotel room.  The trial court considered both motions after oral argument by both parties and denied both motions. Although new information arose during the trial concerning the circumstances of the search of the hotel room, Petitioner did not object when the trial judge decided to continue the trial without suppressing the evidence seized during that search.  Petitioner was also able to litigate both of his motions to suppress on direct appeal.  The record simply does not support Petitioner's contention that he only received a "mock hearing"

8

on his motions to suppress. In light of Good, Petitioner had a full opportunity to litigate his motions to suppress in state court - they both were considered and rejected by the trial court and by the court of appeals. This is sufficient to foreclose further review of those claims by the Court. Good, 2013 WL 4767183, at *4.

Accordingly, Petitioner's objections to Judge Litkovitz's Report and Recommendation on his first and third assignments of error are not well-taken and are **OVERRULED.**

### B. Second and Fourth Assignments of Error

Petitioner was indicted, tried, and convicted on breaking and entering charges, as well as charges of safecracking and receiving stolen property, related to a string of burglaries of bars and other local businesses. During closing arguments, the prosecution highlighted and summarized the evidence that showed that Petitioner personally broke into and entered each of the unoccupied structures that was a subject of the indictment:

> There should be no doubt in your minds that the defendant broke into these numerous bars in Hamilton County, State of Ohio.
>
> Paul's Pub, the Speedway video puts him there; that coat puts him there. Vince's.
>
> Vince's, the property that he took from Vince's in his motel room tells you he broke into that bar.
>
> Roswell's, that ladder taken from Roswell's, placed against Keller's, the cigar box from Keller's found in his motel room. The safe he bashed open, with a cigar that he smoked that comes with his DNA.
>
> Major Tires, the tools are found in that McSwain van. Those tools come back to him, his DNA. The safe found in that van.
>
> Geoffrey's Bar & Grill, the shoe print. That shoe came from his room.

9

> Jellies, the black bubble coat, the hoodie, the DNA comes back to the defendant.
>
> Dairy Queen, glass pieces, that paint matches.
>
> Find him guilty.

Doc. No. 12-13, at 96.

In response, during his closing argument, Petitioner's trial counsel attempted to discount the quality of the circumstantial evidence and argued to the jury that it could not convict the Petitioner unless the prosecution proved that he actually entered each of the structures: "Each and every one of these charges of B&E requires they prove beyond a reasonable doubt that they have shown that Byron Harrington entered those establishments. They didn't do it." Doc. No. 12-13, at 131. Petitioner's trial counsel suggested that merely being present at the scene of the crime, or even aiding and betting others to commit the breaking and entering, was insufficient for the jury to return guilty verdicts:

> Maybe he sat outside and listened to the police scanners. He is not charged with that. He is not charged with aiding and abetting. He is not charged with conspiracy. He is charged with physically, personally entering that store. They did not prove it.

Doc. No. 12-13, at 118.

After retiring to deliberate, the jury submitted two written questions to the trial judge. The first question asked, "If there were three people on a team, two people went inside and one remained in the car and did not enter, can he still be charged with breaking and entering, the one remaining in the car? Doc. No. 12-15, at 2. The second question asked, "Even though he may be part of a group with the purpose of breaking and entering but perhaps did not enter the building, can he still be charged with

breaking and entering?"  Id. at 2-3.  The trial judge proposed to answer each of the

questions "yes," and stated further that he would read the jury the complicity statute,

Ohio Rev. Code § 2923.03,[3] but amended to delete references to conspiracy.  Id.

Petitioner's trial counsel objected to the trial judge's proposed answer on the grounds

that Petitioner had not been charged with aiding and abetting, that he had not defended

the case on the grounds of complicity, and that Petitioner was not on notice of being

charged with complicity.  Id. at 3-4.  In response, the trial judge cited § 2923.03(F),

which states:  "Whoever violates this section is guilty of complicity in the commission of

an offense, and shall be prosecuted and punished as if he were a principal offender. A

charge of complicity may be stated in terms of this section, or in terms of the principal

---

[3]     The complicity statute states in relevant part:

(A) No person, acting with the kind of culpability required for the
    commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section
    2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

. . .

(C) No person shall be convicted of complicity under this section unless
    an offense is actually committed, but a person may be convicted of
    complicity in an attempt to commit an offense in violation of section
    2923.02 of the Revised Code.

Ohio Rev. Code 2923.03(A).

11

offense." Id. at 3.  The trial judge, therefore, overruled counsel's objection to the supplemental instructions, as well as his request to re-open the evidence, and for a mistrial, id. at 4-5, and instructed the jury accordingly.  Id. at 6-8.

Before taking up the jury's questions with counsel, however, the trial judge stated that he had been informed that Petitioner had disrobed and was refusing to come to court "because he doesn't feel it's necessary." Id. at 2. The trial judge stated next that Petitioner's trial counsel had "waived his presence" but that he wasn't "going to bring him into court without his proper attire." Id.  When asked for a response by the judge, Petitioner's trial counsel had nothing to say. Id.  Shortly before the trial judge brought the jury back for the supplemental instruction, he advised Petitioner's counsel that "your client is still disrobed" and that "[i]f you want us to try to put his clothes on, we can have somebody do that and bring him down." Id. at 5.  Petitioner's trial counsel did not directly answer the trial judge's offer to attempt to forcibly clothe Petitioner, but instead renewed his motion for a mistrial, which the judge denied. Id.  The trial judge then brought the jury in and gave the supplemental instructions without Petitioner being present.

On direct appeal, and in his habeas petition, Petitioner argued that the trial court erred both by giving the jury the supplemental instruction on complicity and by giving the supplemental instruction to the jury without him being present in the courtroom.

Regarding his first assignment of error, Petitioner argued that it was unfair for the judge to sua sponte instruct the jury on complicity because the entire trial had proceeded on the theory that he was the principal offender, not an aider and abettor. State v. Harrington, Nos. C-800547, C-0800548, 2009 WL 3400931, at *2 (Ohio Ct.

12

App. Oct. 23, 2009).  In response, the court stated that, by its terms, § 2923.03(F) puts a defendant on notice that he may convicted as either the principal offender or as a complicitor and noted other cases holding that a defendant can be found guilty as an aider and abettor even though he was only charged with being a principal offender.  Id. at *2.  The court concluded that since he was indicted as a principal joint offender with two co-defendants, § 2923.03(F) put Petitioner on notice that he could be convicted as a principal or complicitor on any or all of the charges.  Id. at *3.  Distinguishing several other state cases, the court of appeals also determined that the trial judge did not err in sua sponte instructing the jury on complicity or in the timing of the giving of the instruction.  The court found that the evidence supported giving the instruction and that the issue of complicity only came up in response to the jury's question.  Id. at *3-*4.

The court of appeals also ruled that the trial court did not violate Petitioner's right to be present in the courtroom at a crucial stage of the trial.  The court noted that Petitioner had disrobed and had refused to come to the courtroom and that his counsel did not object to his absence and waived his presence.  The court concluded, therefore, that Petitioner's absence from the courtroom was voluntary.  Id. at *5.

As stated, Petitioner's second assignment of error in his habeas petition alleged that the trial court violated his right to due process under the Fifth Amendment by instructing the jury on complicity after it had already retired to deliberate and after it had already found him not guilty on one count of breaking and entering.  Petitioner's fourth assignment of error in his habeas petition argued that the trial court violated his right to be present at a critical stage of trial by instructing the jury without his presence, thus violating his right to a fair trial.

13

Magistrate Judge Litkovitz recommended rejecting both of these assignments of error. Judge Litkovitz determined that the state court of appeals' resolution of Petitioner's second assignment of error was not contrary to or an unreasonable application of controlling federal law. Judge Litkovitz observed that both federal and state law permit a defendant to be convicted as an aider and abetter of an offense even though he was only charged as a principal offender without violating due process. Additionally, concluding that the court of appeals appropriately distinguished a prior case which Petitioner cited in his brief, Judge Litkovitz also found that the state court of appeals' decision was not based on an unreasonable determination of the facts.

As to his fourth assignment of error, Judge Litkovitz also found that the state court of appeals' decision that Petitioner voluntarily waived his right to be present at trial was not contrary to or an unreasonable application of controlling federal law. Judge Litkovitz concluded further that even if the trial court erred in proceeding with the supplemental jury instruction without Petitioner being present, the error was harmless. Judge Litkovitz observed that Petitioner's trial counsel was present to address the complicity instruction and that Petitioner failed to indicate what objections he would have made to the supplemental instruction and how they would have been different from his attorney's objections.

In his objections to the Report and Recommendation, Petitioner reiterates that his right to due process was violated because he was not put on sufficient notice that he would be tried and convicted for complicity in the breaking and entering charges. Petitioner also suggests that the evidence was insufficient to convict him of being complicit in committing the offenses inasmuch as he argues that merely being present

14

at the scene of a crime is insufficient to find that he was an aider and abettor.  Petitioner

also believes that the trial court should have brought him forcibly to the courtroom

outside of the jury's presence and warned him about his behavior before excluding him

from the proceedings.  Petitioner's objections are not well-taken.

The state court of appeals' resolution of Petitioner's due process claim was not

contrary to or an unreasonable application of controlling federal law.  As Judge Litkovitz

noted in her Report and Recommendation, the Ohio statute on complicity is

substantially the same as federal law in that aiding and abetting is assumed to be a part

of each criminal offense and need not be specifically charged in the indictment to put

the defendant on notice that he could be convicted as an aider and abettor.  See, e.g.,

State v. Ensman, 603 N.E.2d 303, 304 (Ohio Ct. App. 1991) ("In the instant case,

appellant was indicted for aggravated murder in terms of the principal offense.  By virtue

of R.C. 2923.03(F), appellant was on notice that evidence could be presented that he

was either a principal offender, or an aider and abettor."); Hill v. Perini, 788 F.2d 406,

407 (6th Cir. 1986) ("[T]his court has expressly acknowledged that a defendant may be

indicted for the commission of a substantive crime as a principal offender and convicted

of aiding and abetting its commission although not named in the indictment as an aider

and abettor without violating federal due process."); United States v. Floyd

46 Fed. Appx. 835, 836 (6th Cir. 2002) ("[T]his court has held that aiding and abetting is

embodied in every federal indictment, whether specifically charged or not.").  These

cases are also consistent with the U.S. Supreme Court's decision in Schad v. Arizona,

501 U.S. 624 (1991), which held that the jury need not be unanimous in the manner in

which the defendant committed the offense as long as it unanimously agrees that the

15

defendant committed the offense.   See id. at 631 ("We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than indictments were required to specify one alone.").  In view of these authorities, it is clear that the Ohio court of appeals correctly concluded that Petitioner's right to due process was not violated when the trial judge instructed the jury on complicity.

To the extent Petitioner still objects to the timing of the supplemental instruction, the Court finds no error.  "In response to a jury's question after it has begun deliberating a trial judge may and should make clear the law the jury is bound to apply, though it is not his province to advise the jury of collateral aspects of its decision."  United States v. Nunez, 889 F.2d 1564, 1568 (6th Cir.1989) (internal brackets omitted).  In this case, the jury essentially asked the trial judge whether Petitioner could be guilty of breaking and entering, although he did not actually enter the building, if he acted in concert with others who had the intent to commit breaking and entering.  Since the prosecution did not advance an aiding and abetting theory to the jury, this question was apparently prompted by Petitioner's counsel's arguments that the prosecution had to prove his actual entry into the structure and his suggestion that participating as a lookout, such as by monitoring a police scanner, was insufficient for a conviction for breaking and entering.  Although the prosecution did not object to this argument, it clearly was a misstatement of the applicable law[4] which the trial judge was bound to correct once the

---

[4]     See, e.g., State v. Densel, No. 15-96-05, 1996 WL 517384, at * (Ohio Ct. App. Sept. 13, 1996) ("As a 'lookout' who accompanied the primary actors involved in the commission of the offense, defendant clearly assisted in the attempt to trespass inside the Scott Variety Store with the intention of stealing items therein.").

16

jury raised the issue of complicity.

Finally, to the extent that Petitioner contends that the evidence was insufficient to find him guilty of complicity in the offenses, this Court's review is limited to determining whether the state court of appeals was objectively unreasonable in concluding that a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of breaking and entering beyond a reasonable doubt.  Nash v. Eberlin, 258 Fed. Appx. 761, 765 (6th Cir. 2007).  In addition to venue, in Ohio the crime of breaking and entering has three elements: 1) with purpose to commit a theft offense or any felony therein; 2) trespass in unoccupied structure; and 3) by force, stealth, or deception.  State v. Talley, 480 N.E.2d 439, 441 (Ohio 1985).

The state court of appeals reasonably concluded that the evidence was sufficient for a reasonable juror to convict Petitioner of breaking and entering.  During closing arguments, Petitioner's trial counsel all but conceded that the prosecution had proved that unoccupied structures had been broken into and that theft offenses had been committed therein.  See Doc. No. 12-13, at 111 ("[T]here were B&E's, and safes pulled out and bad things done to good people.").  Thus, the only real issue for the jury to determine was whether Petitioner was the person responsible for committing the burglaries.  In its decision, the Ohio court of appeals cited substantial circumstantial evidence from which it reasonably determined that the evidence was sufficient for a reasonable juror to conclude that Petitioner was the perpetrator of the offenses, or complicit in them:

[A] police officer identified Harrington's voice as that of the person who had

17

called the alarm company during a break-in; a coat the defendant was wearing at the time of a break-in and in the same vicinity was found in his motel room; stolen items from multiple break-ins were found in Harrington's motel room and car; Harrington's DNA was found on a cigar at a crime scene; and Harrington's DNA was found on tools recovered from a stolen van.

Harrington, 2009 WL 3400931, at *4.

Accordingly, Petitioner's objections to Magistrate Judge Litkovitz's resolution to his second assignment of error are not well-taken and are **OVERRULED.**

Petitioner's objections to Magistrate Judge Litkovitz's resolution of his fourth assignment of error are likewise not well-taken.

It is well-established that a criminal defendant has a Sixth Amendment right to be personally present at all critical stages of the trial. Rushen v. Spain, 464 U.S. 114, 117 (1983). It is additionally well-established that giving the jury supplemental instructions is a critical stage of a criminal trial. Hudson v. Jones, 351 F.3d 212, 217 (6th Cir. 2003); Caver v. Straub, 349 F.3d 340, 350 n.8 (6th Cir. 2003). A defendant, however, can forfeit his right to be present if his unruly or disruptive conduct makes it impossible to carry on the trial with him in the courtroom. Illinois v. Allen, 397 U.S. 337, 342-43 (1970). Petitioner is correct that the trial judge should first warn a defendant that he will be removed from the courtroom if he does not cease his unruly behavior and that the Supreme Court has identified other measures, such as binding and gagging the defendant and citing him for contempt, as corrective measures other than banishment from the courtroom. Id. It is further true that Petitioner's misbehavior took place outside the courtroom and that the trial judge did not give him any warnings about his behavior before proceeding to the supplemental jury instructions in his absence. Thus, Petitioner has made a colorable showing that the trial judge erred, at least procedurally, in

18

reaching the decision to continue to the supplemental jury instructions without him being present.

Assuming, however, that the trial judge erred, harmless error analysis applies to the judge's decision to exclude Petitioner from the courtroom and/or to give the supplemental jury instruction without him being present.  See Rogers v. United States, 422 U.S.35, 40 (1975) (stating that a violation of Fed. R. Crim. 43, which guarantees the defendant's right to be present at trial, may be harmless error); United States v. Gibbs, 182 F.3d 408, 436 (6th Cir. 1999) (stating that Rule 43's protection is broader than the protection provided by the Fifth and Sixth Amendments); United States v. Riddle, 249 F.3d 529, 535 (6th Cir. 2001) (holding that the defendant's erroneous exclusion from courtroom during voir dire is not a structural error constituting prejudice per se); Jones v. Murphy, 694 F.3d 225, 235 (2nd Cir. 2012) (holding that trial court's erroneous determination that defendant consented to removal from courtroom subject to harmless error analysis).  Under the AEDPA, an error will be harmless unless the Petitioner shows that it had a substantial and injurious effect on the jury's verdict.  Wilson v. Mitchell, 498 F.3d 491, 503 (6th Cir. 2007).

The Court agrees with Magistrate Judge Litkovitz that to the extent the trial judge erred by giving the supplemental jury instruction without Petitioner being present, the error was harmless.  Petitioner's counsel was present for the entire proceeding and preserved objections to both the judge's answers to the jury's questions and to the decision to provide a supplemental instruction to the jury.  The instruction itself was a simple recitation of the complicity statute without further embellishment or commentary. As Judge Litkovitz accurately observed, Petitioner has not indicated that he would have

19

made different or additional objections to the trial judge's decision had he been in the courtroom, nor has he argued that the supplemental instruction was legally incorrect or that he would have proffered a different supplemental instruction to give to the jury. Therefore, Petitioner has failed to show that his absence at this point in the trial had a substantial and injurious effect on the jury's verdict.  Thus, any error by the trial judge was harmless.  <u>Compare</u> <u>with</u> <u>Kentucky v. Stincer</u>, 482 U.S. 730, 747 (1987) (holding that petitioner's due process rights were not violated when he was excluded from competency hearing because he failed to show that his presence would have been useful in ensuring a more reliable determination as to whether witnesses were competent to testify).

Accordingly, Petitioner's objections to the Magistrate Judge Litkovitz's resolution of his fourth assignment of error are not well-taken and are **OVERRULED.**

Conclusion

For the foregoing reasons, Petitioner's objections to Magistrate Judge Litkovitz's Report and Recommendation are not well-taken and are **OVERRULED.**  The Court **ADOPTS** the Report and Recommendation.  Petitioner's application for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

A certificate of appealability will not issue with respect to this order because under the first prong of the applicable two-part standard established in <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings.  Additionally, Petitioner has failed to make a substantial showing of the denial of a constitutional right because reasonable

jurists could not debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further." Id. at 483-84. Petitioner remains free to request issuance of the certificate of appealability from the Court of Appeals. See 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b).

With respect to any application by Petitioner to proceed on appeal in forma pauperis, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of this order would not be taken in good faith. Therefore, Petitioner is **DENIED** leave to appeal in forma pauperis. See Fed. R. App. P. 24(a); Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997).

**IT IS SO ORDERED**

Date November 5, 2013                    s/Sandra S. Beckwith
                                          Sandra S. Beckwith
                                          Senior United States District Judge